# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE TRUSTEES OF THE EIGHTH DISTRICT ELECTRICAL PENSION FUND, DELINQUENCY COMMITTEE OF THE EIGHTH DISTRICT ELECTRICAL PENSION FUND,<br><br>Plaintiffs,<br><br>vs.<br><br>GIETZEN ELECTRIC, INC.,<br><br>Defendant. | Case No. 1:10-CV-00637-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Docket No. 20)**<br><br>**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFFS – CLAIMS BARRED BY STATUTE OF LIMITATIONS (Docket No. 21)** |

Currently pending before the Court are (1) Plaintiffs' Motion for Summary Judgment (Docket No. 20) and (2) Defendant's Motion for Partial Summary Judgment (Docket No. 21). Having participated in oral argument, carefully considered the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  GENERAL BACKGROUND

Plaintiffs The Trustees for the Eighth District Electrical Pension Fund, Delinquency Committee of the Eighth District Electrical Pension Fund (the "Fund") seek to enforce alleged obligations arising under certain Trust Agreements, the provisions of the Employee Retirement Income Security Act ("ERISA"), certain contracts, and certain Collective Bargaining Agreements.  *See* Pls.' Compl., ¶ 1 (Docket No. 1).  Specifically, the Fund alleges that Defendant

**MEMORANDUM DECISION AND ORDER - 1**

Gietzen Electric, Inc. ("Gietzen") failed to make trust contributions required to provide health, welfare, and retirement benefits to its employees.  *See id.*

Through its Motion for Summary Judgment, the Fund seeks to enforce those obligations, arguing that, as a matter of law, (1) Gietzen is liable for the unpaid health, welfare, and retirement benefits owed to the Fund, and (2) Gietzen's affirmative defenses do not apply.  *See* Pls.' Mem. in Supp. of Mot. for Summ. J., p. 1 (Docket No. 20, Att. 1).  In response, Gietzen argues that (1) it was not obligated to pay contributions for those employees it was forced to hire directly from the labor market rather than through the union hall, owing to the union's failure to provide Gietzen with qualified electricians; (2) the Fund overstated the contribution rate for the health and welfare plan; (3) the Fund's claims are barred in part by the applicable statute of limitations;[1] (4) the Fund cannot collect unpaid contributions for the health and welfare plan without proving that they notified Gietzen's employees about their participation and rights under such plan; and (5) the Trust Agreements give the Court discretion to deny an award of interest, liquidated damages, costs, and attorneys' fees for good cause shown and that, here, Gietzen should not be responsible for such sums because the issues relating to unpaid contributions were caused by the union's failure to provide Gietzen with qualified electricians.  *See* Def.'s Opp. to Pls.' Mot. for Summ. J., p. 2 (Docket No. 22).

## II.  DISCUSSION

### A.    Motion for Summary Judgment: Standard of Review

Summary judgment is used "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural

---

[1]  Part and parcel with this argument, Gietzen moves for partial summary judgment in this respect.  *See* Def.'s Mot. for Partial Summ. J. (Docket No. 21).

**MEMORANDUM DECISION AND ORDER - 2**

shortcut," but rather is "the principal tool[ ] by which factually insufficient claims or defenses

[can] be isolated and prevented from going to trial with the attendant unwarranted consumption

of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

However, the evidence, including all reasonable inferences which may be drawn

therefrom, must be viewed in a light most favorable to the non-moving party (*see id*. at 255) and

the Court must not make credibility findings.  *Id*.  Direct testimony of the non-movant must be

believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On

the other hand, the Court is not required to adopt unreasonable inferences from circumstantial

evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine

issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To carry this

burden, the moving party need not introduce any affirmative evidence (such as affidavits or

deposition excerpts) but may simply point out the absence of evidence to support the nonmoving

party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a

jury verdict in its favor.  *Anderson*, 477 U.S. at 256-57.  The non-moving party must go beyond

the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or

admissions on file" that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to

**MEMORANDUM DECISION AND ORDER - 3**

deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d

1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409,

1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's]

attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d

885, 889 (9th Cir. 2003).  A statement in a brief, unsupported by the record, cannot be used to

create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389 n. 3 (9th Cir. 1995).

**B.     Gietzen's Motion for Partial Summary Judgment (Docket No. 21)**

Because Gietzen argues that the Fund's claims are barred at the outset by the appropriate

statute of limitations, the Court will take up its Motion for Partial Summary Judgment first.

The parties agree that, "[s]ince ERISA does not contain its own statute of limitations, the

Court must look to the applicable state law most analogous statute of limitations." *See* Def.'s

Mem. in Supp. of Mot. for Partial Summ. J., p. 3 (Docket No. 21, Att. 2) (quoting Pls.' Mem. in

Supp. of Mot. for Summ. J., p. 12 (Docket No. 20, Att. 1)).  In this respect, there are two Idaho

statutes potentially applicable here:  (1) Idaho Code § 5-216, which provides for a five-year

statute of limitations for "[a]n action upon any contract, obligation or liability founded upon an

instrument in writing"; and (2) Idaho Code § 5-218(1), which provides for a three-year statute of

limitations for "[a]n action upon a liability created by statute . . . ."  The parties disagree as to

which limitations period applies here.  On the one hand, the Fund argues that this action is one

premised upon the underlying collective bargaining agreement – a contract – and, therefore, the

five-year statute of limitations applies. *See* Pls.' Opp. to Def.'s Mot. for Partial Summ. J., pp. 1-

3 (Docket No. 25).  On the other hand, Gietzen argues that this action is an ERISA action  – a

federal statute – and, therefore, the three-year statute of limitations applies. *See* Def.'s Mem. in

Supp. of Mot. for Partial Summ. J., p. 4 (Docket No. 21, Att. 2).

**MEMORANDUM DECISION AND ORDER - 4**

Gietzen's arguments make intrinsic sense; indeed, the Fund is, after all, bringing a claim under ERISA.  *See id*. at p. 4 (" . . .  the Trustees are seeking judgment pursuant to a federal statute, i.e., Section 515 of ERISA (29 U.S.C. § 1145)); *see also* Pls.' Compl. (Docket No. 1); Pls.' Civil Cover Sheet (Docket No. 1, Att. 1).  Moreover, as Gietzen properly points out, the Fund is not only seeking judgment pursuant to ERISA, but also invoking ERISA principles to preclude Gietzen from asserting any defenses under contract law.  *See* Def.'s Mem. in Supp. of Mot. for Partial Summ. J., p. 4 (Docket No. 21, Att. 2) ("Further, Trustees are using ERISA as a sword and shield, as on the one hand they are seeking judgment for unpaid contributions pursuant to ERISA, and on the other hand they are asserting ERISA law to prevent Gietzen from relying on defenses traditionally available in a breach of contract action.").  In essence, Gietzen argues that the Fund cannot have it both ways by, first, employing ERISA to recover for unpaid contributions, without, second, also applying the statute of limitations corresponding to actions created by statute. According to Gietzen, the Fund must (1) advocate for Idaho Code § 5-216 and its five-year limitations period based upon actions sounding in contract, but in turn allow Gietzen to assert its related contract defenses, *or* (2) object to Gietzen's defenses to contractual liability under ERISA's direction, but accept Idaho Code § 5-218(1)'s three-year limitations period related to actions based upon a statute.  Under either scenario, Gietzen argues that the Fund's claims must fail.

Characterized in such a way, Gietzen's arguments are persuasive at first blush.  However, unlike civil rights actions arising under 42 U.S.C. § 1983 (as Gietzen argues (*see id.* at p. 4)), it ultimately ignores the fact that ERISA does not *create* the at-issue obligation here.  Rather, the genesis of that obligation is found within the collective bargaining agreement and its surrounding materials.  ERISA simply supplies the mechanism to enforce that contractual obligation.  That is,

**MEMORANDUM DECISION AND ORDER - 5**

the contractual agreement (in this case, the collective bargaining agreement's contribution

obligations) exists to identify the parties' (including, relevant here, third party beneficiaries)

respective rights and obligations, while also being subject to whatever law surrounds that

agreement's enforcement (in this case, ERISA).  Such an interplay between contract and statute

does not operate to alchemize a clear contractual claim into a statutory claim.  The claim is, and

always has been, one premised upon a contract that now must be examined through the lens of

ERISA's enforcement authority.  *See, e.g.*, *Aikens v. U.S. Transformer, Inc.*, 2009 WL 1940559,

*3-4 (D. Idaho 200) (finding claim to enforce terms of benefits plan subject to ERISA as stating

claim for breach of contract and applying five-year statute of limitations period); *Brasley v.*

*Fearless Farris Service Stations, Inc.*, 2009 WL 631460, *8 (D. Idaho 2009) ("Moreover, under

the more likely conclusion that the benefits claims are considered breach of contract claims, this

Court should apply the most analogous state statute of limitations to determine the length of the

limitations period.  As the parties agree, Idaho's 5-year statute of limitations for breach of

written contracts is the most analogous in this case.").  Idaho Code § 5-216 and its five-year

limitations period applies.

Through audits in 2007 and 2010, the Fund first became aware of the alleged contribution

deficiencies giving rise to this action.  Those audits revealed that Gietzen had not "reported"

three workers who performed work covered by the collective bargaining agreement.  Regardless

of the reasons for not reporting such work (discussed more fully, *infra*, in the context of the

Fund's Motion for Summary Judgment), Gietzen does not dispute that the Fund's claims did not

begin to run until it had reason to know of the alleged underpayments – in this case, 2007 at the

earliest.  With Idaho Code § 5-216's five-year limitations period in mind, coupled with the Fund

**MEMORANDUM DECISION AND ORDER - 6**

instituting this action on December 23, 2010, it cannot be said that the Fund's claims are barred

by the statute of limitations.  Gietzen's Motion for Partial Summary Judgment is denied.

**C.      The Fund's Motion for Summary Judgment (Docket No. 20)**

Simply put, the Fund contends that Gietzen failed to make required financial

contributions to various funds pursuant to valid collective bargaining agreements.  *See* Pls.'

Mem. in Supp. of Mot. for Summ. J., p. 3 (Docket No. 20, Att. 1).  The parallel statute for such a

claim is ERISA section 515, 29 U.S.C. § 1145, which states:

> Every employer who is obligated to make contributions to a multiemployer plan
> under the terms fo the plan or under the terms of a collectively bargained agreement
> shall, to the extent not inconsistent with the law, make such contributions in
> accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Thus, the prima facie elements for a section 515 violation are: (1) the trust

fund is a multiemployer plan; (2) the defendant is an employer obligated to pay contributions

under the terms of the plan; and (3) defendant failed to pay contributions in accordance with the

plan.  *See, e.g.*, *Board of Trustees of Sheet Metal Workers v. Sawyer*, 2000 WL 1006522 (N.D.

Cal. 2000).  Here, there is no dispute that the Fund is considered to be a multiemployer fund.

There is also no dispute that Gietzen did not make the contested contributions.  This action

therefore turns on whether Gietzen was actually *obligated* to make such contributions.

Arguing against such an obligation, Gietzen contends that (1) the Local 449 (the

"Union") was required to provide Gietzen with qualified electricians under the collective

bargaining agreement and, (2) in 2004 and continuing in 2005, the Union failed to do so on

numerous occasions.  *See* Def.'s SOF No. 4 in Opp. to Pls.' Mot. for Summ. J. (Docket No. 22,

Att. 1) (citing Douglas Gietzen Decl. at ¶ 4 (Docket No. 21, Att. 3)).  In a January 21, 2005

letter, Douglas Gietzen, Gietzen's President, brought this issue to the Union's attention, while

**MEMORANDUM DECISION AND ORDER - 7**

giving the Union notice that Gietzen was withdrawing and terminating its assent to be bound by

an earlier collective bargaining agreement, effective May 31, 2005.[2]  *See id.*  Therein, Mr.

Gietzen stated:

> Douglas C. Gietzen, owner of GIETZEN ELECTRIC, INC. Has been unable to get
> qualified persons to man jobs, in fact your own office informs me that there are
> presently 95 men on the books, however "none of them will take a call for GIETZEN
> ELECTRIC, INC." to quote your office staff.

*See id.*  Gietzen goes on to claim that, as of September 2005,[3] the Union was still unable to

provide it with qualified electricians and, as a result hired Frederick Kretschmer directly from

the labor market rather than through the Union.  *See* Def.'s SOF No. 7 in Opp. to Pls.' Mot. for

Summ. J. (Docket No. 22, Att. 1) (citing Douglas Gietzen Decl. at ¶ 6 (Docket No. 21, Att. 3)).

This happened two more times – in September 2006 with the hiring of Tom Fisher and, again, in

March 2008 with the hiring of Zach Schiffler.  *See id.*  Because Gietzen hired Kretschmer,

Fisher, and Schiffler directly through the labor market rather than through the Union *as a result*

of the Union's alleged failure to provide qualified electricians (as opposed to, say, voluntarily

hiring non-Union workers), Gietzen argues in response to the Fund's claims that it was not

required to report these individuals' hours or contribute funds under the collective bargaining

---

[2]  According to Gietzen, the Union submitted the issue about extending the term of the collective bargaining agreement to arbitration before the Council on Industrial Relations for the Electrical Contracting Industry in Washington D.C.  *See* Def.'s SOF No. 1 in Opp. to Pls.' Mot. for Summ. J. (Docket No. 22, Att. 1).  Gietzen did not appear because of the cost and expense to fly to Washington D.C.  *See id.*  The Council for Industrial Relations for the Electrical Contracting Industry ultimately ruled that Gietzen and the Union were to execute a collective bargaining agreement with an extended term of June 1, 2005 through May 31, 2008.  *See id.*  Although "against its will," Gietzen executed a collective bargaining agreement with the Union, extending the term accordingly.  *See id.*

[3]  Before September 2005, Gietzen hired its electricians directly from the Union.  *See* Def.'s SOF No. 6 in Opp. to Pls.' Mot. for Summ. J. (Docket No. 22, Att. 1) (citing Douglas Gietzen Decl. at ¶ 6 (Docket No. 22, Att. 1)).

**MEMORANDUM DECISION AND ORDER - 8**

agreement.  *See* Def.'s SOF No. 8 in Opp. to Pls.' Mot. for Summ. J. (Docket No. 22, Att. 1)

(citing Douglas Gietzen Decl. at ¶ 7 (Docket No. 21, Att. 3)); *see also* Def.'s Opp. to Pls.' Mot.

for Summ. J., p. 4 (Docket No. 22) (". . . Gietzen did not owe contributions if Local 449 was

unable to fulfill its obligations to provide Gietzen with qualified electricians to staff its jobs.").

        The Court has given careful attention to the predicament that Gietzen describes – namely,

a *quid pro quo* relationship between Gietzen and the Union whereby, under the collective

bargaining agreement, Gietzen submits its contributions in exchange for the Union providing

qualified electricians for Gietzen's use.  Gietzen contends it is caught between Scylla and

Charybdis – the company alleges, in essence, that it sought to hire qualified electricians through

the Union hall consistent with the collective bargaining agreement, but that the Union failed to

fill the need.  Yet, Gietzen is still being asked to make contributions to the Fund related to the

employees hired by Gietzen that were not hired through the Union.

        However, despite the equitable sympathies sought to be elicited by Gietzen, its argument

is constrained in the ERISA context, for the reason that although it might be an otherwise

sensible defense to Gietzen's obligation to contribute funds under a collective bargaining

agreement, the protection of the contract defense dissipates in an ERISA dispute.  As the Ninth

Circuit in *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769 (9th Cir. 1986),

explained:

> For reasons of public policy, traditional contract law does not apply with full force
> in actions brought under [ERISA] to collect delinquent trust fund contributions.  In
> recognition of the fact that millions of workers depend upon employee benefit trust
> funds for the retirement security, Congress and the courts have acted to simplify trust
> fund collection actions by restricting the availability of contract defenses, which
> make collection actions unnecessarily cumbersome and costly.

*Id*. at 773 (citations omitted).  In the Ninth Circuit, only those defenses demonstrating illegality

of the contributions or striking at the heart of the underlying collective bargaining agreement as

**MEMORANDUM DECISION AND ORDER - 9**

void *ab initio* (as opposed to, merely, voidable), are available when contesting delinquency

actions such as this.  *See id*. at 773-75.  Gietzen neither disputes the state of Ninth Circuit law in

this regard, nor does it attempt to argue that the contributions are illegal or that the applicable

collective bargaining agreement is somehow void by virtue of the Union's alleged failure to

perform.  Therefore, as equitably intuitive as Gietzen's argument generally is, it is nonetheless a

defense that, while potentially available in a typical contract dispute, is not recognized under

ERISA's more constrained framework, driven by public-policy intended to favor benefit

protection.

Here, the collective bargaining agreement requires each employer to contribute a certain

sum "for each hour worked by each employee of the Employer performing work covered by this

Agreement."  *See* Ex. B at §§ 6.02, 6.03, 7.03, 8.03, 9.01, 10.01 to Rodney James Decl. (Docket

No. 20, Att. 5); *see also* Ex. C at §§ 6.02, 6.03, 6.04, 7.03, 8.03 to Gill Decl. (Docket No. 22,

Att. 5).  The Trust Agreements (expressly incorporated by the collective bargaining agreement)

define "employee" as an individual employed by a participating employer covered by a

collective bargaining agreement.  *See* Ex. E at Ar. 11, § 7 to Rodney James Decl. (Docket No.

20, Att. 8); *see also* Ex. F at Art. 11, § 5 to Rodney James Decl. (Docket No. 9).  The collective

bargaining agreement covered all inside electrical work.  *See* Ex. B at Title Page to Rodney

James Decl. (Docket No. 20, Att. 5); *see also* Ex. C at Title Page to Gill Decl. (Docket No. 22,

Att. 5). Messrs. Kretschmer, Fisher, and Schiffler performed inside electrical work.  *See* Def.'s

Resp. to RFA Nos. 2-4, attached as Ex. A to Durand Decl. (Docket No. 20, Att. 16).  Because (1)

Gietzen agreed to contribute funds for employees performing covered work, and (2)  Messrs.

Kretschmer, Fisher, and Schiffler were Gietzen employees performing covered work, Gietzen is

**MEMORANDUM DECISION AND ORDER - 10**

not excused from making contributions vis à vis those three individuals pursuant to the collective

bargaining agreement.  Whatever dispute existed as between Gietzen and the Union exists

independently of Gietzen's duties owed to the Fund.  *See, e.g.*, *Board of Trustees of Local 41*

*Int'l Brotherhood of Electrical Workers Health Fund v. N.E.R.S., Inc.*, 2007 WL 4934236, *4

(W.D.N.Y. 2007) (rejecting employer's argument that union failed to provide "skilled electrical

field personnel" and by referring "electrical field personnel who were unqualified to perform the

tasks required," holding that, even if true "that would not affect its obligation to the Funds"

because "an employer may not raise the Union's breach of the CBA as a defense against an

employee benefit fund suing for delinquent contributions unless the CBA preserved such a

defense in 'unequivocal words.'") (citations omitted).

This is not to say that Gietzen is (and always has been) forever stuck in a Catch-22

situation.  Any dispute it may have had with the Union in supplying qualified electricians could

have been formally pursued under the collective bargaining agreement's grievance procedures.

*See* Ex. B at §§ 1.05-1.10 to Rodney James Decl. (Docket No. 22, Att. 5); *see also* Ex. C at

§§ 1.05-1.09 to Gill Decl. (Docket No. 22, Att. 5); *Carpenters Health & Welfare Trust Fund v.*

*Bla-Delco Constr., Inc.*, 8 F.3d 1365, 1369 (9th Cir. 1993) (concluding that employer "could have

pursued its dispute with the Union under the grievance and arbitration procedures of the CBA"

but that "Trust Funds were not required to follow those procedures" because "[i]t would

contravene the policy to simplify and expedite trust fund collection actions to require the Trust

Funds in this case to litigate the termination dispute between [the employer] and the Union.").

Whether, or to what extent, this was done is unknown, and ultimately immaterial to the Fund's

**MEMORANDUM DECISION AND ORDER - 11**

pursuit of this delinquency action.  *But see* Douglas Gietzen Decl. at ¶ 5 (Docket No. 21, Att. 3)

(describing May 17, 2005 meeting with union representatives Ted Jensen and Benny Antunes to

discuss Union's alleged failure to provide Gietzen with qualified electricians).  Further, whether

Gietzen is actually able to assert a claim against the Union for the latter's alleged breach of the

collective bargaining agreement is not a question before this Court and, accordingly, is beyond

the scope of this Memorandum Decision and Order.

The Court is not ignoring the obvious issue raised by the alleged failure of the Union to

have workers available to Gietzen which, in turn, prompted Gietzen to hire the three, non-Union

employees.[4]  However, when presented within the boundaries of an ERISA claim, the Court's

consideration of such underlying factors can only go so far.  At its core, Gietzen's defense to its

contribution obligations is a defense unrecognized to the claims brought in this case under

applicable Ninth Circuit law,  and the parties offer no controlling case law that either speaks to

the issues presented here or warrants a departure from existing (albeit inexact) case law.  On a

more complete record, or in a different case, it may be possible for an employer like Gietzen to

have its contribution obligations excused.  But here, those obligations remain intact – Gietzen's

potential contract law defenses to the enforceability of the underlying collective bargaining

agreement do not provide it with a valid defense to the Fund's action under ERISA.  The Fund's

---

[4] It should also be noted that, based upon the somewhat attenuated record upon this subject, this is not a situation where the Union altogether failed to have qualified electricians available to employ, but, a situation where those workers may not have wanted to work with Gietzen, or wanted to work for some other employer more.  *See supra*.  Hence, this may not be a case where the Union simply did not have any (numerically speaking) workers on its roll call to handle employer needs, but, instead, represents more of a quarrel between Gietzen and the Union.

**MEMORANDUM DECISION AND ORDER - 12**

Motion for Summary Judgment is granted.[5]

## III. ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that:

1.    Plaintiffs' Motion for Summary Judgment (Docket No. 20) is GRANTED; and

2.    Defendant's Motion for Partial Summary Judgment (Docket No. 21) is DENIED.

DATED:  **September 24, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[5]  On the issue of the applicable contribution rate, the Court understands this issue to be resolved.  *Compare* Def.'s Opp. to Pls.' Mot. for Summ. J., p. 5 (Docket No. 22) *with* Pls.' Reply in Supp. of Mot. for Summ. J., p. 5 (Docket No. 28).  Moreover, because Gietzen admits that Kretschmer's, Fisher's, and Schiffler's hours were not reported (*see* Def.'s SOF No. 8 in Opp. to Pls.' Mot. for Summ. J. (Docket No. 22, Att. 1) (citing Douglas Gietzen Decl. at ¶ 7 (Docket No. 21, Att. 3))), the Fund's ability to inform them of their right to benefits is understandably hindered to the point that Gietzen's arguments in this respect are not persuasive.  *See* Pls.' Reply in Supp. of Mot. for Summ. J., p. 6 (Docket No. 28) ("Simply put, the Funds can't inform people they don't know about.").  Finally, as to any discretion given to the recovery of identified interest, liquidated damages, costs, and attorneys' fees, such discretion is vested in the Fund, not this Court.  While it does not seem that Gietzen withheld any contribution funds in bad-faith, such an inquiry therein is not for this Court to resolve.

**MEMORANDUM DECISION AND ORDER - 13**